**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Gary Byrne, as Administrator of the Estate | : | |
| of Ethan Byrne, deceased; and Gary and | : | |
| Genevieve Byrne, H/W | : | |
| | : | |
| vs. | : | Civil Action No. 21-3199 |
| | : | |
| Springfield School District; and Springfield | : | |
| Board of School Directors;  and | : | |
| Dr. Anthony Barber, in his Official Capacity | : | |
| as Superintendent of Springfield School | : | |
| District; and Joseph Hepp, Individually and | : | |
| in his Official Capacity as Principal of | : | |
| Springfield High School | : | |

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2021,

upon consideration of Defendants' Motion to Dismiss Plaintiffs' Complaint (ECF Doc. No. 1), and

any response thereto, it is hereby **ORDERED** and **DECREED** that Defendants' Motion to Dismiss

is **GRANTED**.

It is **ORDERED** and **DECREED** that Plaintiffs' Complaint (ECF Doc. No. 1) against

Defendants is hereby **DISMISSED WITH PREJUDICE**.

BY THE COURT:

_____
J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Gary Byrne, as Administrator of the Estate of Ethan Byrne, deceased; and Gary and Genevieve Byrne, H/W | : : : : | |
| vs. | : : | Civil Action No. 21-3199 |
| Springfield School District; and Springfield Board of School Directors;  and Dr. Anthony Barber, in his Official Capacity as Superintendent of Springfield School District; and Joseph Hepp, Individually and in his Official Capacity as Principal of Springfield High School | : : : : : : : : | |

## DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Defendants, by and through their counsel, Marshall Dennehey Warner Coleman & Goggin, respectfully move to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  In support thereof, Defendants submit the attached Memorandum of Law.

Respectfully submitted,

**MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN**

BY: _____

LEE C. DURIVAGE
Identification Number: 205928
2000 Market Street, Suite 2300
Philadelphia, PA  19103
Phone: (215) 575-2584
Fax: (215) 575-0856

Attorney for Defendants

Dated: September 20, 2021

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Gary Byrne, as Administrator of the Estate | : | |
| of Ethan Byrne, deceased; and Gary and | : | |
| Genevieve Byrne, H/W | : | |
| | : | |
| vs. | : | Civil Action No. 21-3199 |
| | : | |
| Springfield School District; and Springfield | : | |
| Board of School Directors;  and | : | |
| Dr. Anthony Barber, in his Official Capacity | : | |
| as Superintendent of Springfield School | : | |
| District; and Joseph Hepp, Individually and | : | |
| in his Official Capacity as Principal of | : | |
| Springfield High School | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On October 19, 2020, Ethan Byrne tragically committed suicide. Prior to his suicide, there

was nothing conveyed to his parents or to any of the Defendants identifying any risk of a possible

suicide. Despite the lack of any prior warnings, Plaintiffs (Gary Byrne, as administrator of the

estate of Ethan Byrne, and both Gary and Genevieve Byrne individually) filed a lawsuit, asserting

the following claims against the Springfield School District ("SSD"), its Board of Directors, its

superintendent, and the principal of the high school: Section 1983 – substantive due process/state-

created danger (Count I); Section 1983 – substantive due process/shocks the conscience (Count

II); Section 1983 – municipal liability (Count III). Plaintiffs further assert claims of Wrongful

Death and Survival against Defendant Hepp in Counts IV and V of the Complaint.

Specifically, Plaintiffs' Complaint alleges that on June 2, 2020, Ethan was involved in a

groupchat exchange with other students and used racial slurs in connection with a discussion

regarding the Black Lives Matter movement. Pls' Compl. (ECF Doc. No. 1), at ¶¶ 48-51. During

this exchange, Plaintiffs' Complaint alleges that "one of Ethan's closest, longstanding friends" (referenced as Student #1) became upset by the comment and referred to Ethan as a "racist" and threatened to send the comments to "black twitter." Plaintiffs' Complaint alleges that on June 3, 2020, Ethan texted Student #1 inquiring about whether he was going to send the comment to anyone and Student #1 responded, "No, It was [a joke]." According to the Complaint, Ethan responded that "I'd honestly probs [probably] kms [kill myself] if I'm being honest about it." *Id.*, at ¶ 59. There is no allegation in the Complaint that these text messages were ever shared with any of the Defendants at any time. In fact, Plaintiffs' Complaint expressly confirms that "[n]either of Ethan's parents had any reason to believe Ethan could ever become suicidal." *Id.*, at ¶ 22.

Plaintiffs' Complaint alleges that on Thursday, October 15, 2020, Ethan returned to the high school on a hybrid schedule in light of the COVID-19 pandemic. Plaintiffs' Complaint alleges that following his lunch period, he was "unexpectedly called to the principal's office" and Mr. Hepp advised Ethan that another student (identified as Student #2) "reported to Hepp that Ethan" had used a racial slur during lunch that day. *Id.*, at ¶¶ 64-65. Plaintiffs' Complaint alleges that "Ethan responded that he had not made such a comment" and "was flabbergasted why Student #2 would make such a claim about him." *Id.*, at ¶ 66. Following the meeting, and unbeknownst to Defendants, Ethan began communicating with Student #2 and Student #1 and Ethan learned that Student #1 had taken a screenshot of the June 2, 2020 groupchat exchange and shared it with others. *See generally*, *Id.*, at ¶¶ 67-74.

On Monday, October 19, 2020, Ethan returned to school and Plaintiffs' Complaint alleges that "he was harassed and bullied by Student #2 and her friends." Plaintiffs' Complaint alleges that Ethan informed another student that "Student #2 and her friends are behind me and laughing and talking about me.  I can't do this bro" and "I can't wait to get out of this f\*\*king school." *Id.*, at ¶¶

81-82. The Complaint alleges that later that morning, he was called to Mr. Hepp's office for a meeting and Ethan reported to others that "Hepp has the [screenshot from June 2] but believes it's not me and just wanted to make me aware again" and that "[people] are pissed apparently." ___*Id.*___, at ¶¶ 83-84. Plaintiffs' Complaint alleges that Ethan communicated with Student #1 and reported that "Hepp doesn't know you['re] involved" and Ethan advised Mr. Hepp that he did not know where Student #2 got the screenshot, informing Mr. Hepp that "it wasn't me and someone [probably] changed the name or something but I don't know why." ___*Id.*___, at ¶ 89.

Plaintiffs' Complaint alleges that Student #1 apologized to Ethan for "letting [the screenshot] get out" and acknowledged that it was his fault. ___*Id.*___, at ¶ 90. Ethan accepted the apology, advising Student #1 that "you got nothing to be sorry for."  ___*Id.*___, at ¶ 91. Plaintiffs' Complaint alleges that "[s]hortly after 4:00 p.m., and after receiving a direct message on Instagram threatening him and his family with serious physical violence, Ethan surreptitiously took a handgun from the gun vault at home, told his mother he was going to the firehouse, and drove away." ___*Id.*___, at ¶ 92. Ethan then drove to a nearby town and committed suicide. ___*Id.*___, at ¶ 93. While Plaintiffs now bring various civil rights claims against SSD and its officials, it is evident that Plaintiffs' claims are deficient as a matter of law and must be dismissed, with prejudice.

## II.     **LEGAL STANDARD**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of a complaint for failure to state a claim upon which relief may be granted. *Fed. R. Civ. P. 12(b)(6)*. The purpose of a 12(b)(6) motion is to test the legal sufficiency of the complaint and to "streamline litigation by dispensing with needless discovery and fact finding." ___*Neitzke v. Williams*___, *490 U.S. 319, 326-27 (1989)*. Therefore, when it appears from the face of the pleading that a plaintiff can prove no set of facts that would entitle him to relief, the court must dismiss plaintiff's claims. *See*

*Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). Further, a complaint may be dismissed "if it does not allege 'enough facts to state a claim to relief that is plausible on its face.'" *See* **Odom v. Erie Ins. Exchange**, *2008 WL 5188828,  *1 (W.D. Pa. 2008)*; *see also* **Bell Atlantic Corp. v. Twombly**, *550 U.S. 544 (2007)*; **Ashcroft v. Iqbal**, *556 U.S. 662, 684 (2009)* (stating that the decision in ***Twombly*** "expound[s] the pleading standard for 'all civil actions'). Indeed, the United States Supreme Court has unequivocally determined that the pleading standard under Federal Rule of Civil Procedure 8 demands more than an "unadorned, the defendant-unlawfully-harmed-me accusation." ***Iqbal***, *556 U.S. at 678*. Moreover, a pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* Nor does a complaint suffice if it tenders "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.*, *citing* ***Twombly***, *at 557*; *see also* **Evancho v. Fisher**, *423 F.3d 347, 351 (3d. Cir. 2005)* (stating that "a court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss"). Where, as here, Plaintiffs can prove no set of facts in support of their claims against Defendants, Plaintiffs' claims in the Complaint should be dismissed as a matter of law.

## III.  **ARGUMENT**

### A.  Plaintiffs' Claims Against the School Board and the Individual Defendants in their Official Capacities Should be Dismissed.

It is well-established that official capacity claims and claims against a subunit of a municipality are routinely dismissed when the municipality or local agency is also sued. *See* **Damiano v. Scranton Sch. Dist.**, *135 F. Supp. 3d 255, 268-269 (M.D. Pa. 2015)* (dismissing claims against individual school "board members in their official capacity" because they "are redundant of the claims plaintiff asserts against [the school district]"); *see also* **Brice v. City of York**, *528 F. Supp. 2d 504, 516 n.19 (M.D. Pa. 2007)* (stating that "claims against state officials in their official capacities merge as a matter of law with the municipality that employs them").

-4-

Here, Plaintiffs assert claims against the Springfield Board of School Directors. Plaintiffs further assert claims in the Complaint against Dr. Anthony Barber "in his official capacity as an employee of SSD" and against Joseph Hepp "in his official capacity as an employee of SSD and [Springfield High School]." Pls' Compl., at ¶¶ 14-15. However, the proper entity being sued is the SSD, rather than the school board. Moreover, like in ***Damiano***, the "official capacity" claims asserted against Dr. Barber and Mr. Hepp are redundant of the claims against the SSD. Accordingly, all claims against the Springfield Board of School Directors, and all "official capacity" claims should be dismissed.

      B.    <u>Plaintiffs' "State-Created Danger" Claim Fails as a Matter of Law.</u>

A plaintiff asserting a claim under Section 1983 must allege a person acting under color of state law engaged in conduct that violated a right protected by the Constitution or laws of the United States. ***<u>Nicini v. Morra</u>***, *212 F. 3d 798, 806 (3d Cir. 2000)*. "The first step in evaluating a Section 1983 claim is to 'identify the exact contours of the underlying rights said to have been violated' and to [then] determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" ***<u>Id.</u>***, quoting ***<u>Cnty. of Sacramento v. Lewis</u>***, *523 U.S. 833, 841 n. 5 (1998)*. Plaintiffs' Section 1983 claim rests on the Due Process Clause of the Fourteenth Amendment, which states that a state shall not "deprive any person of life, liberty or property, without due process of law." *U.S. Const. Amd. XIV, § 1*. Plaintiffs invoke the substantive component of due process, which "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" ***<u>Collins v. City of Harker Heights</u>***, *503 U.S. 115, 125 (1992)*. Of course, the Supreme Court has held that "municipalities have no affirmative duty to protect people from violence at the hands of private individuals." ***<u>Kelly v. Bristol Township Sch. Dist.</u>***, *2019 WL 6698210, \*2 (E.D. Pa. 2019)*, *citing* ***<u>DeShaney v. Winnebago County Dep't of</u>***

_**Soc. Servs.**_, _489 U.S. 189, 195-196 (1989)_. Notably, the Third Circuit "has observed that _**DeShaney**_ therefore 'stands for the harsh proposition that even though state officials know that a person is in imminent danger from a third party, the Fourteenth Amendment imposes upon those state officials no obligation to prevent them.'" _**Id.**_, _quoting_ _**Horton v. Flenory**_, _889 F.2d 454, 457 (3d. Cir. 1989)_. The Third Circuit, however, does recognize the exceptions to this general rule when "a special relationship exists between the state and plaintiff" or when a "state-created danger" occurs." _**Id.**_ In order to sustain a claim under a "state-created danger" theory, Plaintiffs must plead and prove the following:

   (1)   the harm ultimately caused was foreseeable and fairly direct;

   (2)   A state actor acted with a degree of culpability that shocks the conscience;

   (3)   A relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendants' acts, or a member of a discrete class of persons subjected to the potential harm brought about the state's actions, as opposed to a member of the public in general; and

   (4)   A state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to the danger than had the state not acted at all.

_**Morrow v. Balaski**_, _719 F.3d 160, 177 (3d. Cir. 2013)_, _citing_ _**Bright v. West Moreland Cnty.**_, _443 F. 3d 276, 281 (3d Cir. 2006)_; _see also_ _**Ivers v. Brentwood Borough Sch. Dist.**_, _2021 WL 768166, *3 (W.D. Pa. Feb. 26, 2021)_ (noting that plaintiffs must satisfy all four prongs of the test).

Significantly, courts have routinely dismissed state-created danger claims premised on student bullying. In _**Morrow**_, the Third Circuit upheld the dismissal of plaintiffs' state-created danger claims premised on allegations that the students/plaintiffs were harassed, bullied and assaulted by a classmate, even after the classmate was arrested. _**Morrow**_, _719 F.3d at 164-165._  In rejecting the claims, the Third Circuit noted that plaintiffs' complaint "simply attempts to redefine

clearly passive inaction as affirmative acts" and "merely restating the Defendants' inaction as an affirmative failure to act does not alter the passive nature of the alleged conduct" to support the fourth prong of the state-created danger test. *Id.* at 178-179; *see also* ***Sanford v. Stiles***, *456 F.2d 298, 312 (3d. Cir. 2006)* (collecting cases and noting that "[o]ur holding that [plaintiff] has failed to make out a state-created danger claim is consistent with the case law of other circuits that have addressed similar cases involving student suicides").

In ***Sanford***, the Third Circuit determined that plaintiff could not demonstrate that the guidance counselor created a danger toward student, agreeing with the district court's analysis that "the link between the Defendants' conduct and [student's] untimely death is far too attenuated to justify the imposition of liability." ***Sanford***, *456 F.2d at 312*. In so holding, the Third Circuit reasoning that (1) student only visited the guidance counselor twice, the first of which was initiated by the guidance counselor, (2) there was no evidence that the student was agitated by those meetings or that the meeting contributed in any way to his suicidal feelings, (3) there was no evidence to suggest that student relied on the guidance counselor for support, and (4) there was nothing to suggest that the guidance counselor interfered with the parental relationship at all. *Id.*

More recently, in ***Lansberry***, the Court dismissed plaintiff's state-created danger with prejudice. There, the father of a student who committed suicide filed a Section 1983 lawsuit against the school district and school officials, arguing that the failure to properly address bullying within the school constituted a state-created danger. ***Lansberry v. Altoona Area Sch. Dist.***, *318 F.Supp. 3d 739, 744 (W.D. Pa. 2018)*. Specifically, the student suffered "intense, persistent, and malicious bullying from fellow students" that included "unwanted and unwarranted physical contact," "persistent and pervasive ridicule," "threats of violence" and comments that he was "better off dead" and should commit suicide. *Id.* at 745. In dismissing plaintiff's state-created danger claim

and finding that "[plaintiff] failed to allege an affirmative use of state authority that rendered [the student] more vulnerable to danger than he would have been had defendants done nothing," the court noted that the Third Circuit instructs that a court "should first evaluate the setting or the status quo of the environment before the alleged act or omission occurred, and then ask whether the state actor's exercise of authority resulted in a departure from that status quo." ***Id.*** *at 755*. The court expressly rejected plaintiff's arguments regarding the district's failure to comply with its policy, noting that "a school's failure to enforce its own policy does not constitute an affirmative act." ***Id.***; *see also **Beam v. W. Wayne School**, 165 F.Supp. 3d 200, 215 (M.D. Pa. 2016)* (dismissing state-created danger claim involving student who committed suicide and finding that the school's failure to comply with state-mandated plan for special education was not an affirmative act). Where, as here, Plaintiffs cannot plead facts for all of the four prongs of the state-created danger test and where case law has routinely dismissed similar claims, Plaintiffs' state-created danger claim in Count I of the Complaint must be dismissed, with prejudice.

> **1.** **The Harm Sustained by Plaintiffs Was Not a Foreseeable Direct Result of Defendants' Alleged Actions.**

In order to establish the foreseeability requirement, Plaintiffs must establish "an awareness on the part of [Defendants] that rises to the level of actual knowledge or an awareness of risk that is sufficiently concrete to put the actors on notice of the harm." ***Phillips v. County of Allegheny***, *515 F. 3d 224, 238 (3d. Cir. 2008)*. Here, there are simply no facts pled demonstrating an awareness on the part of the District (or Mr. Hepp individually) of a risk to Plaintiffs. To the contrary, the allegations set forth in the Complaint confirm that there was no indication that Ethan was in danger of committing suicide or that he was ever bullied. Indeed, parents expressly confirm that they were unaware of any issues Ethan was having at school, or otherwise. Moreover, the facts pled regarding Ethan's limited interactions with Mr. Hepp demonstrate that he made no complaints

about alleged bullying, and he expressly denied any involvement with posting or saying any racial slurs at any time—which appears to be the reason Plaintiffs now contend Ethan was bullied. While Plaintiffs appear to allege that suicide is a risk whenever a student is bullied, the Third Circuit has never held this to be true. To the contrary, as noted above, the Third Circuit (and courts within the circuit) have routinely dismissed state-created danger claims premised on bullying in school. As Plaintiffs cannot demonstrate that any harm to them was a foreseeable direct result of Defendants' actions, Count I of Plaintiffs' Complaint must be dismissed.

## 2.    Plaintiffs Have Failed to Demonstrate Any Conscience Shocking Actions.

To satisfy the second element of the state-created danger claim, Plaintiff must show that the Defendants' acted with a degree of culpability that shocks the conscience. *See **Morrow**, 719 F.3d at 177*; ***Sanford**, 456 F. 3d at 310* (emphasis in original) (clarifying that "in *any* state-created danger case, the state actor's behavior must *always* shock the conscience").  "[T]he exact degree of wrongfulness necessary to reach the 'conscience-shocking' level depends upon the circumstances of a particular case, and depends in particular on 'the extent to which a state actor is required to act under pressure.'" ***Walter v. Pike Cnty., P.A.**, 544 F. 3d 182, 192 (3d. Cir. 2008)* (citations omitted).  In a "hyper-pressurized environment," an intent to cause harm is usually required while "in cases where deliberation is possible and officials have some time to make 'unhurried judgments,' deliberate indifference is sufficient." ***Id.***  This prong is a high threshold to satisfy and will often decide the case. ***Sanford**, 456 F. 3d at 305*.  Furthermore, "mere negligence is not enough to shock the conscience." ***County of Sacramento v. Lewis**, 523 U.S. 833 (1998)*.

In ***Sanford***, plaintiff appealed the dismissal of a state-created danger claim following the suicide of a high school student.  There, plaintiff alleged that the school's guidance counselor received a note that was sent to the student's ex-girlfriend that he heard a rumor that "almost made me want to go kill myself." ***Sanford**, 456 F.3d at 301*.  After the ex-girlfriend reported it to the

guidance counselor, the guidance counselor met with student and the student denied being upset and denied that anything was bothering him. The guidance counselor saw the student approximately a week later and the student merely asked whether a "blond-haired girl" gave her the note. Id. at 302. Later that evening, the student committed suicide at his home. *Id.* *at 303*. In upholding the dismissal of the state-created danger claim, the Third Circuit noted that "regardless of whether deliberate indifference, or something more, is required to show that [the guidance counselor's] conduct shocked the conscience, [plaintiff] is unable to meet her burden." *Id.* *at 310-311*. In so holding, the Third Circuit examined the "apparent gravity of the risk" and reasoned that that "no one"—including the student's family—believed that student was at risk of harm, and further reasoned that the guidance counselor did meet with student so she could not have "disregarded any risk that [student] presented." *Id.* *at 311*.

Here, Plaintiffs' Complaint generally alleges that "Defendant Hepp was deliberately indifferent to the danger Ethan faced and his actions and inaction increased the risk of danger to Ethan," and further alleges that "Hepp knew Ethan was under severe attack for a regrettable insensitive comment he made many months before." Yet, an actual review of Plaintiffs' Complaint confirms that, like *Sanford*, "no one" had an understanding or belief that Ethan was in danger. Indeed, like *Sanford*, Plaintiffs confirm that "[n]either of Ethan's parents had any reason to believe Ethan could ever become suicidal." Pls.' Compl., at ¶ 22. Similarly, like *Sanford*, the allegations levied against Defendant Hepp consist of two meetings where (1) Mr. Hepp allegedly advised Ethan of an allegation that Ethan called another student a racial slur (which Ethan denied); and (2) Mr. Hepp showed Ethan the screen shot using the racial slur and Ethan told Mr. Hepp "it wasn't me and someone [probably] changed the name or something but I don't know why" and Mr. Hepp believed him. Unlike *Sanford*, there is no indication that any suicidal comments made by Ethan

-10-

were referred to Mr. Hepp or anyone else at SSD and there is no factual assertions in the Complaint that Ethan advised Mr. Hepp—or anyone else at SSD—of purported bullying. In fact, the only reference to bullying appears to concern that "Student #2 and her friends are behind me laughing and talking about me." Pls.' Compl., at ¶ 82. As there are no facts demonstrating "conscience shocking" actions by Defendants, Count I of Plaintiffs' Complaint should be dismissed.

### 3.   Plaintiffs Have Failed to Plead any Affirmative Acts by Defendants.

It is well-established that under the fourth prong of the state-created danger test, Plaintiffs must prove that a "state actor affirmatively used his or her authority in a way that created a danger to the citizen or rendered the citizen more vulnerable to the danger than had the state not acted at all." **_Bright_**, *443 F. 3d at 281*. Of course, it is equally well-established that a failure to act cannot form the basis of a valid Section 1983 claim. **_Kaucher v. County of Bucks_**, *455 F. 3d 418 (3d. Cir. 2006)*. Indeed, courts in the Third Circuit have routinely dismissed state-created danger claims where, as here, the complaint is premised on a school district's alleged failure to address or act on purported bullying concerns. For instance, as noted above in **_Sanford_**, the Third Circuit determined that plaintiff could not fulfill the fourth prong of the state-created danger test where "the link between the Defendants' conduct and [student's] death [was] far too attenuated to justify the imposition of liability" and noting that plaintiffs "attempted to 'recharacterize' [the guidance counselor's] failures as 'affirmative actions.'" **_Sanford_**, *456 F.3d at 312.* In so holding, the Third Circuit reasoned that "[w]e believe this case is more about [the guidance counselor's] failure to prevent [student's] death" and "[a]s we have stated many times, 'mere failure to protect an individual…does not violate the Due Process Clause.'" **_Id._**

Here, Plaintiffs' Complaint does not allege any "affirmative act" necessary to support a state-created danger claim. Rather, Plaintiffs' Complaint provides a list of purported omissions on the part of Defendants (and Mr. Hepp specifically) and generally opines that had he notified parents

of his meeting with Ethan, parents could have "intervened and secured proper help for him." Pls'

Compl., at ¶ 9. Of course, the Third Circuit has routinely rejected state-created danger claims

where plaintiffs attempt to characterize inactions as "affirmative actions." Yet, that is exactly the

type of allegations made in this case. For instance, Plaintiffs allege that after speaking with Ethan

on October 19, 2020, "Hepp did nothing else" and "Hepp did not notify or otherwise attempt to

notify Ethan's parents of the bullying or consequences on Ethan." ___Id.___, at ¶¶ 3-4. Plaintiffs make

similar assertions that "Defendant Hepp…and his actions and inactions increased the risk of danger

to Ethan," asserting that "Hepp had more than adequate time to investigate the bullying but did

absolutely nothing." ___Id.___, at ¶¶ 111; 116.  Plaintiffs further allege that "[t]here was no discipline for

the bullying students" and "Hepp's failure to notify Ethan's parents was deliberately indifferent."

___Id.___, at ¶ 116; *see also* ¶ 120 (Hepp did nothing to de-escalate, investigate, or mitigate the situation

or aid the minor in his care); ¶ 123 ("Defendants did nothing to protect Ethan from the bullying");

¶ 124 ("Defendants had ample time to share potentially lifesaving information with Ethan's parents

before he committed suicide…[and] [t]hey chose not to").

Quite simply, the Third Circuit has expressly and affirmatively rejected these exact type of

allegations each time it has been faced with a bullying case before it.  As noted at length above,

the Third Circuit in ___Sanford___ determined that plaintiffs' allegation that the guidance counselor's

failure to call student's parents before committing suicide was not an affirmative act for purposes

of state-related danger.  Similarly, the Third Circuit in ___Morrow___ confirmed that there "merely

restating the Defendants' inaction [to bullying] as an affirmative failure does not alter the passive

nature of the alleged conduct" to support the fourth prong of the state-created danger test.  Of

course, other courts throughout Pennsylvania (and throughout the country) have routinely come to

the same conclusion and dismissed state-created danger claims when faced with allegations that a

school failed to address bullying. *See **G.G. v. Penn-Trafford Sch. Dist.**, 813 Fed. Appx. 799, 802 (3d. Cir. 2020)* (affirming dismissal of state-created danger claim premised on student's contention that she reported multiple incidents of bullying that were ignored, reasoning that the Third Circuit has "consistently held [that] inaction does not give rise to an affirmative act" in the context of a state-created danger claim); ***Monn v. Gettysburg Area Sch. Dist.**, 553 Fed. Appx. 120 (3d. Cir. 2014)* (accord); ***H.J. v. Delaplaine McDaniel Sch.**, 2017 WL 5901096, \*3-4 (E.D. Pa 2017)* (rejecting plaintiff's state-created danger claim alleging that school permitted student to be bullied and later injured); ***M.T. v. Uniontown Area Sch. Dist.**, 2021 WL 807713, \*5 (W.D. Pa. Mar. 3, 2021)* (allegation that school failed to monitor a stairwell was insufficient to establish that the school "engaged in affirmative conduct that created, or increased, the risk of harm, or that made the plaintiff 'more vulnerable' than if the School District had 'stood by and done nothing at all'"); ***Feucht v. Triad Local Sch. Bd. of Educ.**, 425 F. Supp. 3d 914 (S.D. Ohio 2019)* (dismissing state-created danger claim following years of bullying against student, which resulted in student committing suicide, reasoning that the failure to act in the school bullying context does not satisfy the element of an affirmative act). As Plaintiffs have failed to allege any affirmative act on the part of Defendants, Count I of Plaintiffs' Complaint must be dismissed.

C.   Plaintiffs' "Shocks the Conscience" Claim Fails as a Matter of Law and Appears to be Duplicative of Plaintiffs' State-Created Danger Claim.

Count II of Plaintiffs' Complaint alleges "shocks the conscience" liability and further alleges that "Defendants…deprived Ethan and Plaintiffs of rights, privileges, and immunities secured to them by the United States Constitution, including the right to due process under the Fourteenth Amendment, and specifically the right to be free from government actions that shock the conscience." Pls.' Compl., at ¶¶ 142-144.  The Third Circuit has stated that "a plaintiff must show that the particular interest in question is protected by the Fourteenth Amendment and that

-13-

the government's deprivation of that interest "shocks the conscience." ***Vargas v. City of Phila.***, *783 F.3d 962 (3d. Cir. 2015)* (noting that "[t]he shocks-the-conscience test applies regardless of the theory upon which the substantive due process claim is premised").  Here, Plaintiffs has failed to actually plead what theory of substantive due process or even what purported constitutional rights have allegedly been violated.  That failure notwithstanding, Plaintiffs still fail to plead any conscience-shocking behavior.  As noted above, the Third Circuit's decision in ***Sanford*** is directly on point and confirms the lack of any conscience shocking acts in this case.

Moreover, while it is unclear as to whether Plaintiffs are attempting to allege a "special relationship" theory, it would, likewise, fail as a matter of law.[1]  In ***Morrow***, the Third Circuit expressly rejected the argument that a student and public school have a "special relationship," noting that "every other Circuit Court of Appeals that has considered this issue in a precedential opinion has rejected the argument that a special relationship generally exists between public schools and their students. ***Id.*** *at 170, 173* (citing cases from the First, Fifth, Sixth Seventh, Eighth, Ninth, Tenth and Eleventh Circuits). As Plaintiffs cannot demonstrate that there was a "special relationship" between themselves and Defendants, Count II should be dismissed.

D.     Plaintiffs' Municipal Liability/Monell Claims in Count III Should be Dismissed.

Count III of Plaintiffs' Complaint alleges "municipal liability" against Defendants, alleging that "Defendants failed to provide an adequate policy to guide defendants…responding to bullying;" "Defendants failed to adequately train and supervise defendants…on how to respond to incidents like those experienced by students like Ethan Byrne;" and "SSD had a policy and/or custom of not notifying parents of students involved in bullying incidents." Pls' Compl., at ¶¶ 146-

---

[1] Plaintiffs' Complaint alleges that "Hepp knew that Ethan was in SHS' custody and was dependent on Hepp and the other Defendants to protect him," which appears to suggest that Plaintiffs are pursuing a "special relationship" theory of substantive due process. Pls.' Compl., at ¶ 112.

-14-

147; 149.  It is well-established that a municipal entity may be held liable under Section 1983 when its custom or policy causes the alleged constitutional violation. ***Monell v. Dep't of Social Servs. of City of N.Y.***, *436 U.S. 658, 694 (1978)*. In particular, a plaintiff asserting a Monell claim must establish that "(1) [he or] she possessed a constitutional right of which [he or] she was deprived; (2) the municipality had a policy [or custom]; (3) the policy [or custom] 'amounted to deliberate indifference' to [his or] her constitutional right; and (4) the policy [or custom] was the 'moving force behind the constitutional violation.'" ***MGJ v. Sch. Dist. of Phila.***, *2017 WL 2277276, \*7 (E.D. Pa. 2017)*. Indeed, "[t]o satisfy the pleading standard, [a plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was" and if "a plaintiff alleges that he or she was harmed by a custom, as opposed to a formally enacted policy, custom requires proof of knowledge and acquiescence by the decisionmaker." ***Buonadonna v. Southeast Delco Sch. Dist.***, *2015 WL 2365629, \*8 (E.D. Pa. 2015)*. As noted by the Court in ***Buonadonna***, "[f]ailure to allege conduct by a municipal decisionmaker is fatal to a Monell claim." ***Id.***

Under certain circumstances, an unconstitutional custom can consist of a municipality's failure to train or supervise. Indeed, "[e]stablishing municipal liability on a failure to train claim under § 1983 is difficult" and a "plaintiff pressing a § 1983 claim must identify a failure to provide specific training that has a causal nexus with their injuries." ***MGJ***, *2017 WL 2277276 at \*9*. Significantly, "[w]here a plaintiff alleges that the municipal policy that cause the injury concerned a failure to train, supervise, or discipline, the plaintiff must demonstrate that (1) the failure amounted to a deliberate indifference to the rights of persons with whom the municipal employee comes in contact; and (2) the municipal's policy of failing to train, supervise, or discipline actually caused the constitutional injury." ***Buonadonna***, *2015 WL 2365629, at \*11*; *see also* ***Fuentes v. Sch. Dist. of Phila.***, *2019 WL 1505861, \*11 (E.D. Pa. 2019)* (noting that "deliberate indifference

-15-

is a stringent standard of fault" and "[o]rdinarily, a pattern of similar constitutional violations is necessary to demonstrate deliberate indifference"). Notably, in order to meet the standard for ***Monell*** liability under a failure to train theory, "the need for more or different training [must be] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the municipality can reasonably be said to have been deliberately indifferent to the need." ***Robinson v. Fair Acres Geriatric Ctr.***, *722 Fed. Appx. 194 (3d. Cir. 2018)*. Moreover, it is equally well-established that municipal entities cannot be held liable for constitutional deprivations merely by hiring alleged tortfeasors; rather, the complained of injury must be causally linked to a custom or policy of the municipal entity to which an employee was acting. *See* ***Beck v. City of Pittsburgh***, *89 F.3d 966, 972 (3d. Cir. 1996)*; ***H.J.***, *2017 WL 5901096 at \*5* (accord).

Here, other than conclusory allegations of ***Monell*** theories, Plaintiffs fail to plead any facts that would support a basis for such a claim. Indeed, Plaintiffs' Complaint makes no reference to any policy or custom that would support a finding of liability under ***Monell***—let alone that the policy or custom was a moving force behind a constitutional injury. To the contrary, Count III of Plaintiffs' Complaint merely alleges that SSD had a "policy and/or custom of not notifying parents of students involved in bullying incidents." There is nothing in the Complaint, however, to support any finding that this purported policy amount to a deliberate indifference to Plaintiffs' constitutional rights and there are certainly no facts in the Complaint to support a finding that the policy was the "moving force behind the constitutional violation." Indeed, Plaintiffs' Complaint makes it clear that Ethan never mentioned bullying to Mr. Hepp and simply denied making the screenshot that Plaintiffs now indicate was the reason for bullying. More importantly, however, is the fact that a purported policy of not responding to bullying has been routinely rejected by the courts as supporting a ***Monell*** claim. *See* ***B.D. v. Cornwall Lebanon Sch. Dist.***, *2021 WL 1253522,*

*18 (M.D. Pa. Apr. 5, 2021) (granting motion to dismiss *Monell* claim premised on the school district's "practice of not recording bullying incidents," stating that "a school's failure to respond to reports of bullying cannot give rise to liability under § 1983 because it is not an affirmative act"); *see also* **_Lansberry v. Altoona Area Sch. Dist._**, *356 F.Supp. 3d 486, 502 (W.D. Pa. 2018)* (stating that "harm caused by student-on-student bullying is not a constitutional harm that *Monell* protects against" and "the cases are in agreement that students do not have a constitutional right to be free from bullying and harassment from other students").

Moreover, while Plaintiffs make the conclusory allegation that Dr. Barber is the "final decisionmaker for all SBSD policies, practices, and decisions," there is no allegation that Dr. Barber was involved in any of the events contained in the Complaint at all. Rather, Plaintiffs assert a legal conclusion (which appears to contradict the rest of Count III) that Mr. Hepp "was acting as a final decision-maker" "[t]o the extent that Hepp acted in violation of SBSD or SSD's policies" and "[t]he Defendants (other than Hepp) ratified Hepp's actions." Plaintiffs, however, provide no factual support for a finding that Mr. Hepp was a decision-maker and the law is clear that "[t]he Monell Court rejected, as a categorical matter, the concept of respondeat superior liability."

Next, although Count III appears to suggest that Plaintiffs' claims are premised on a failure to train and/or supervise, there are no facts in the Complaint demonstrating that the failure to train amounted to a deliberate indifference of Plaintiffs' constitutional rights, or that the policy of failing to train or supervise actually caused the constitutional injury. Similarly, the complaint is devoid of any facts identifying "a failure to provide specific training that has a causal nexus with their injuries" and Plaintiffs have failed to identify "a pattern of similar constitutional violations" necessary to demonstrate deliberate indifference." Quite simply, it is clear that Plaintiffs' generic legal conclusions of "unadorned, the defendant-unlawfully-harmed-me accusation[s]" with respect

to their claims for constitutional violations against the Defendants falls far short of the requisite factual enhancement needed to state a claim pursuant to the Supreme Court's directives in ***Iqbal*** and ***Twombly***.  Accordingly, Count III must be dismissed.

   E. <u>Parents' Individuals Claims in Counts I through III Should be Dismissed.</u>

   Plaintiffs' Complaint allege substantive due process claims and municipal liability claims against "all defendants" by "all plaintiffs." While this appears to suggest that parents are asserting constitutional claims on their own behalf, the complaint is devoid of any facts as to what those constitutional rights are or how any of the defendants violated those rights. There is no indication of any state action toward parents, or any conscience shocking acts toward parents. Moreover, the Third Circuit has affirmed the dismissal of parents' substantive due process claims where there was no indication of deliberate action on the part of the government to harm the parent-child relationship. *See* ***Chambers v. Sch. Dist. of Phila.***, *587 F.3d 176, 192 (3d. Cir. 2009)*; *see also* ***Moreno v. Metro. Gen. Hosp.***, *210 F.3d 372 (6th Cir. 2000)* (finding that "no cause of action may lie under section 1983 for emotional distress, loss of a loved one, or any other consequential collateral injuries allegedly suffered personally by the victim's family members").  Based upon the foregoing, parents' claims in Count I through III should be dismissed.

   F. <u>Defendant Hepp is Entitled to Qualified Immunity.</u>

   It is well-established that state actors sued in their individual capacity are entitled to qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would know." ***Harlow v. Fitzgerald***, 4*57 U.S. 800, 818 (1982)*. A court analyzing a qualified immunity defense "must determine (1) whether the facts alleged by the plaintiff make out a violation of a constitutional right, and (2) whether the right was clearly established at the time of the injury." ***Mann v. Palmerton Area Sch. Dist.***, *189 F.Supp.*

*3d 467, 478 (M.D. Pa. 2016)*. A state actors' "conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." ***Id.***. In order to determine whether the right has been clearly established, "[t]he Supreme Court has emphasized that 'we do not require a case directly on point before concluding that the law is clearly established, but existing precedent must have placed the statutory or constitutional question beyond debate.'" ***Id.***, *quoting **Stanton v. Sims**, 134 S.Ct. 3, 5 (2013)*. Indeed, the court in ***Mann*** found that a coach sued by a player who was injured was entitled to qualified immunity, noting that "no published opinion of the Third Circuit has found that a state-created danger arises when coaches fail to take certain precautions in athletic practice or in any analogous situation" so student's "right was not clearly established at the time of his injury." ***Id.*** *at 478-479*.

Here, as noted above, Plaintiffs have failed to demonstrate that there was a violation of their constitutional rights by Mr. Hepp. Assuming *arguendo* that Plaintiffs did set forth a basis for a finding that their constitutional rights were violated, they have nonetheless failed to demonstrate that "the right was clearly established at the time of the injury." Indeed, virtually every case within the Third Circuit involving bullying in schools has held that school district employees have no constitutional duty to protect students from bullying, and there is certainly no case finding that parents have a constitutional right to be notified of bullying in schools. As Plaintiffs cannot demonstrate that Mr. Hepp caused a violation of a "clearly established" constitutional right of Plaintiffs, he is entitled to qualified immunity and all claims against Mr. Hepp must be dismissed.

      G.     <u>Plaintiffs' Cannot Sustain a Valid Claim for Wrongful Death or Survival</u>.

Here, Plaintiffs assert wrongful death and survival action claims against Defendant Hepp. Plaintiffs' Complaint, however, is devoid of any facts demonstrating what purported theory

Plaintiffs attempt to rely on in support of their wrongful death claim against Mr. Hepp. There is no valid tort theory in the complaint that would render Mr. Hepp liable under the wrongful death or survival statute. Similarly, even if Plaintiffs attempted to assert that Mr. Hepp was somehow liable under a tort theory, he would be immune from such a claim pursuant to the Political Subdivision Tort Claims Act. *See 42 Pa. Cons. Stat. § 8545* ("[a]n employee of a local agency is liable for civil damages…caused by acts of the employee which are within the scope of his office or duties only to the same extent as his employing local agency…."). As Plaintiffs' Complaint consistently asserts that Mr. Hepp was acting within the scope of his employment at all times relevant, was a decisionmaker for Monell purposes, and because no exception to the PSTCA applies, Counts IV and V of the Complaint should be dismissed.

## IV.   <u>CONCLUSION</u>

Based upon the foregoing, Defendants respectfully request that their Motion to Dismiss Plaintiffs' Complaint be granted and that an Order be entered dismissing all claims against Defendants, with prejudice.

Respectfully submitted,

**MARSHALL DENNEHEY WARNER**
**COLEMAN & GOGGIN**

BY: _____
LEE C. DURIVAGE
Identification Number: 205928
2000 Market Street, Suite 2300
Philadelphia, PA  19103
Phone: (215) 575-2584
Fax: (215) 575-0856

Attorney for Defendants

Dated: September 20, 2021

-20-

## **CERTIFICATE OF SERVICE**

I, Lee C. Durivage, Esquire, do hereby certify that a true and correct copy of Defendants'

Motion to Dismiss Plaintiffs' Complaint and Memorandum of Law in Support of their Motion to

Dismiss was served upon all counsel by electronic service through the Court's ECF system at the

following address:

Joseph R. Podraza, Jr., Esquire
William H. Trask, Esquire
**Lamb McErlane PC**
One South Broad Street, Suite 1500
Philadelphia, PA 19107

**MARSHALL DENNEHEY WARNER**
**COLEMAN & GOGGIN**

BY: _____
LEE C. DURIVAGE
Attorney for Defendants

Dated: September 20, 2021